OPINION OF THE COURT
William P. Polito, J.
Relief Requested
This dispute was submitted by the parties to binding arbitration pursuant to the collective bargaining agreement between the Rochester School District and the Rochester Teachers Association. The arbitrator’s factual findings, determination and rationale is dated February 2, 2005 and attached to the movant’s petition as exhibit No. 11.
The movant District seeks to set aside the arbitrator’s determination as being totally irrational, against public policy, and without authority.
The Association responds that the determination is not totally irrational, against public policy or without authority, and seeks to confirm the award.
Decision
The petition is denied and the arbitrator’s determination is confirmed.
Rationale
Applicable Standard of Review by the Court
“ ‘The role of the courts in addressing the disposition of disputes which have been submitted to binding arbitration pursuant to a collective bargaining agreement is limited ... A court cannot substitute its judgment for that of an arbitrator or conform the award to its sense of justice even where an arbitrator makes errors of law or fact . . . Moreover, where the arbitration is conducted pursuant to a broad arbitration agreement between the parties, . . . the resulting award may not be vacated unless it is violative of a strong public policy, is totally irrational or clearly exceeds a specifically enumerated limitation on the arbitrator’s power.’ ” (Matter of Windsor Cent. School Dist. [Windsor Teachers Assn.], 306 AD2d 669, 670 [3d Dept 2003] [citations omitted and internal quotation marks omitted].)
The specific question presented to arbitrator La Manna was “whether the District breached the agreement with the Associa *323 tion when it failed to advance incumbent teachers two steps on the salary scale after they obtained their Masters Degrees? If so, What shall be the remedy.”
The parties at oral argument agreed that “incumbent teachers” applies only to those teachers newly hired during the then current contract period from July 1, 2000 to June 30, 2002.
Neither party has raised the issue of whether the application is effective only from the date of the committee’s amendment on or about February 2001.
The parties did not otherwise limit the powers of the arbitrator to decide the issue in controversy, but simply chose to submit the question without limitation in accordance with the collective bargaining agreement and past practices of the parties.
Accordingly, the arbitrator found in favor of the Association and against the School District on the specific issue submitted and the related subissues raised by the District and addressed by both parties before the arbitrator, as follows:
1. That it was not a subcommittee but rather the Living Contract Committee (LCC) which entered into the subject agreement.
2. That the evidentiary submission and conduct of the parties were sufficient to determine that the subject agreement was made as contended by the Association.
3. That the agreement was not a “substantive amendment” requiring further internal ratification and procedures, despite the alleged monetary effect on the District.
The arbitrator detailed her rationale for each of her aforesaid determinations, which this court finds had a well-reasoned basis in accordance with application of usual contract interpretation principles CRochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578 [1977]; Matter of Correction Officers Benevolent Assn. v City of New York, 160 AD2d 548 [1st Dept 1990]) including admissions by conduct and statements. (PJI 1:55, 1:56 [2004].) In any event, none of the determinations were totally irrational, against public policy, or clearly exceeded the arbitrator’s authority.
Most of the petitioner’s submissions to this court consist of valid reasons why the arbitrator should have supported the District’s interpretation over the Association’s, but are not legally compelling and do not rise to the level of showing the arbitrator’s decision to be “totally irrational.”
*324 Substantive Amendment
However, the petitioner’s primary contention relates to the arbitrator’s third determination in finding that the amendment was not substantive, despite a possible $1 million increase in costs.
The petitioner argues that the cost of implementing the alleged amendment makes it “substantive” as a matter of law. Since the LCC did not obtain the District’s internal approval procedures, it is ineffective and the arbitrator had no authority to find for the Association or implement that increased cost result.
For reasons hereinafter stated, the court does not find upon the record submitted to the arbitrator that the LCC amendment was substantive as a matter of law. Rather, the court finds that the amendment is arguably substantive or nonsubstantive, and an appropriate issue for submission and determination by the arbitrator under the language of the agreed collective bargaining agreement approved by the Board of Education.
Arbitrator’s Rationale
The arbitrator’s rationale as stated in her decision is arguably sufficient to support her position that the amendment was not substantive, and did not require further approvals. (Arbitrator’s decision at 9.) It is not “totally irrational.”
The collective bargaining agreement does not define what constitutes a “substantive amendment.” Neither does Black’s Law Dictionary define “substantive amendment” or “substantive.” Webster’s New Collegiate Dictionary defines “substantive” as “4: Considerable in amount or numbers.” (Webster’s New Collegiate Dictionary 1975 [G&C Merriam Co.].)
Determinations submitted to arbitrators often carry fiscal consequences and the resultant additional costs by themselves do not automatically constitute an excess of the arbitrator’s authority. (Matter of Antonopoulou v Beame, 32 NY2d 126 [1973]; Matter of Fallek v City School Dist. of City of Poughkeepsie, 145 AD2d 482 [2d Dept 1988], lv denied 74 NY2d 603 [1989].)
Here, it would be reasonable for the arbitrator to expect that in light of the District’s goal of having all new hires with Master’s degrees the District would have evaluated the full potential costs if all new hires had Master’s degrees when implementing that specific salary increase. If so, the LCC’s determination had the financial effect of lowering that full *325 potential cost by staggering those costs and delaying its full implementation by hiring some teachers without Master’s degrees at lower salaries and implementing the salary increase later when the Master’s degree was acquired. Such result would be consistent with its stated goals of achieving all new hires with Master’s degrees.
Further, as a question of proof, the figures of $1 million cost based on the alleged 600 to 1,000 additional hires of teachers without degrees during that contract period does not appear to be substantiated in the record before the arbitrator. Nor was the $1 million cost shown relative to the overall passed budget, its reserves, the amounts which were allocated to fund each of the salary categories of the agreement, or the possible reduction or factoring in of costs to those same teachers who would, nevertheless, under its approved salary increases have still received an increase after five years with a Master’s degree and would not now receive that increase, or would receive a lesser increase.
The arbitrator could also determine that the District’s conduct was an admission that the amendment was not substantive. (Prince, Richardson on Evidence § 8-222 [Farrell 11th ed] [“Admission by Conduct in Civil Cases”]; PJI 1:55, 1:56.)
The District, after receipt of the letter clearly stating the alleged agreement (that “any new hire who completes his/her master’s degree will be advanced two steps on the index” [petition, exhibit 3, letter dated Mar. 20, 2001]), made subsequent decisions as to whether, how and when to apply that agreement to substitute teachers (petition, exhibit 4, letter dated June 13, 2001), and to probationary teachers (petition, exhibit 5, letter dated June 18, 2001), as well as its actual implementation to some new hires. In doing so, it never raised an issue that such agreement was so costly to the overall budget as to be substantive requiring “internal ratifications and procedures.” Nor did it raise a need for legislative board approval under section 5 of the agreement. Rather, the only cost concern raised was that of the added reimbursement to those teachers from the District for the later acquired Master’s degree which reimbursement was already authorized under section 49 (3) of the bargaining agreement (petition, exhibit 7, letter of May 13, 2002 and handwritten response dated May 31, 2002).
Accordingly, based upon the circumstances, the proof submitted and the hiring schedule which was previously implemented, it was not “completely irrational” for the arbitrator to find that the amendment was not substantive, or that such a nonsubstantive modification was not against public policy.
*326 Waiver by Submission of “Substantive Amendment” Issue to Arbitrator
As to the authority of the arbitrator to determine whether an amendment is substantive or not, the District conceded that such issue could arguably be decided either way when it knowingly agreed to submit it as a subissüe to the arbitrator rather than seek a prior court determination. (See closing argument of petitioner as to substantive fault, exhibit 9, at 8; closing argument of respondent as to nonsubstantive fault, subd B, at 10; CPLR 7503, 7511 [b] [1]; [c].) Accordingly, the District cannot now contest the arbitrator’s authority, when the arbitrator determined the very issue submitted by the District to her for binding determination with full knowledge of its fiscal consequences. (Matter of Frankfurt-Schuyler Cent. School Dist. [Sara-fin], 181 AD2d 1036 [4th Dept 1992]; Rochester City School Dist., supra at 583.)
The cases cited by the petitioner as to the arbitrator exceeding its authority are not applicable because here the collective bargaining agreement at sections 46 (3) (a) and 50 (2) and (3) (c) and No. 13 of the guidelines admittedly authorized the LCC to “amend” the agreement relative to the enacted salary guidelines, including substantive and nonsubstantive amendments: “the joint committee [LCC] shall also have the power to amend this agreement, provided that any substantive amendments shall be subject to Internal ratification and approval procedures of the District and Association.” That bargaining agreement was approved by all parties and presumably by the Board of Education.
Accordingly, the arbitrator’s determination of the LCC’s amendment as submitted by the parties is not an unauthorized alteration or modification of the collective bargaining agreement itself prohibited by section 14 (4) (d) (4). Nor is the arbitrator fashioning a remedy or result outside her authority. It was the LCC which amended the collective bargaining agreement as authorized therein, and the arbitrator merely settled a disputed interpretation of that agreement as submitted by both parties under the collective bargaining agreement.
Petitioner submits that the subsequent collective bargaining agreement’s (2002-2004) exclusion of that amendment as a specific salary increase is conclusive proof of LCC’s prior nonapproval of the amendment. However, even if such subsequent conduct, which was not available or submitted to the arbitrator, created an inference evidentially admissible to prove prior inten *327 tions, such omission does not necessarily support the District’s interpretation. It is equally inferential that the continuation of LCC’s authority to amend the agreement, without any definition of “substantive” including a monetary amount, supports the Association’s and arbitrator’s position. Accordingly, such subsequent conduct is not dispositive of the issue submitted on behalf of either side.
Other Considerations
Since the arbitrator reasonably found that the amendment was not substantive, she did not reach the issue of whether the District ratified a substantive amendment by conduct, and thereby waived any additional “internal” procedure requirements.
Thus, this court further does not reach the issue of whether it is against public policy for a district to submit a financially substantive amendment to an arbitrator for final determination without a prior public hearing, board approval, and those safeguards designed to protect the interests of the taxpayer.